[No. 35524. Department Two. April 13, 1961.]

CHARLES M. MACKENZIE *et al., Respondents,* v. JOHN R. SELLNER, *Appellant,* LILA LEA SELLNER, *Defendant.**

*Reported in 361 P. (2d) 165.

*Clarke, Clarke, Albertson & Bovingdon,* for appellant.

*McCutcheon, Soderland & Wells,* for respondents.

OTT, J.—November 18, 1955, John R. Sellner and Lila Lea Cordell purchased a Chevrolet automobile in North Dakota. The title was registered in the name of "CORDELL LILA LEA AND/OR SELLNER JOHN RICHARD." They were married on December 31, 1955.

December 19, 1956, marital difficulties arose which resulted in Mrs. Sellner's commencing an action for divorce on December 27, 1956. After December 19, 1956, Mr. Sellner lived separate and apart from his wife at all times and pursued his vocation as a seaman. Mrs. Sellner was employed by the Boeing Aircraft Company as a draftsman trainee. They entered into a property settlement agreement which provided, *inter alia,* that Mrs. Sellner was to have all right, title, and interest in the Chevrolet automobile, and that

"All property or income hereafter acquired or received by either party shall be the sole and separate property of the party acquiring or receiving the same. . . .

"This agreement is and shall be final and conclusive between the parties and is a final and complete agreement of the parties regarding their property rights and financial obligations, . . . and this agreement shall be effective as of the date hereof, . . ."

The agreement, amended April 17, 1957, in particulars not material here, was incorporated into a decree of divorce granted to Mrs. Sellner on April 30, 1957.

March 14, 1957, prior to the entry of the divorce decree, Mrs. Sellner was involved in an automobile accident. She left Boeing at approximately 6:30 p. m., in the Chevrolet automobile which was awarded to her as her sole and separate property in the property settlement agreement. She stopped at a tavern and had several bottles of beer, and then drove to a restaurant in west Seattle. After dinner, she

drove, unaccompanied, to Alki Drive, where she parked her automobile and sat for some time looking out over the water. At about 11:00 p. m., she started to return to her place of residence, but, before reaching her destination, became involved in the aforementioned automobile accident.

Charles M. MacKenzie and Laslie M. Stewart were injured in the accident. They commenced this action against the Sellners, individually and as a marital community, to recover for the damages they sustained. Judgment was rendered against Mrs. Sellner individually, and against the marital community. From that portion of the judgment imposing liability on the community, John R. Sellner has appealed.

The appeal is before this court on a short record. In accordance with Rule on Appeal 34(3), RCW Vol. 0, the appellant has designated the point upon which he relies as follows:

"That the defendant John R. Sellner has no legal liability, of either a separate or community character, for the injuries suffered by or judgment in favor of the plaintiffs."

This appeal presents a single question: Although the marriage contract existed at the time the tort was committed, did a community still exist to which the liability of an individual spouse can be imputed?

In arriving at its decision, the trial court considered the ownership of the automobile as irrelevant to the issues of the instant case, and relied upon our prior decisions imposing liability on the community for torts of an individual spouse, where the individual tort-feasor, at the time of committing the tort, was engaged in recreational activity. Those decisions are based on the premise that recreational activities on the part of either spouse promote and advance the general welfare of the community and, therefore, such recreational activity inures to its benefit. See *Moffitt v. Krueger*, 11 Wn. (2d) 658, 120 P. (2d) 512 (1941), and cases cited therein. The facts in the cited cases distinguish them from the instant case, because, in those cases, the community remained intact.

■ In the instant case, a divorce action had been commenced, the parties were living separate and apart, and a property settlement agreement had been executed and subsequently approved by the court, which determined the status and character of Mr. and Mrs. Sellner's present and future property from the date of the property settlement agreement, as well as determining the status and character of their present and future obligations. Nothing but the shell of the marriage contract remained at the time the tort occurred.

Under the circumstances here present, the recreational pursuits of Mrs. Sellner on March 14, 1957, the date of the accident, did not benefit the community for the reason that the community relationship, by agreement of the parties, did not exist. The cited cases are not here apposite.

■ Nor could Mrs. Sellner have been acting as an agent for a community which, for all practical purposes, had been terminated. Unless the tort-feasor was acting as the agent of the community, or the individual's action was for the benefit of the community, liability cannot be imposed upon it. See *McHenry v. Short,* 29 Wn. (2d) 263, 186 P. (2d) 900 (1947), and cases cited therein. There is no evidence in the record which supports a factual finding of a community benefit, or proof of an agency that would support a judgment of community liability.

The trial judge, in his oral decision, stated:

" . . . The strength of the law always gives to the continuity of marriage and preserving it as against destroying it.

" . . . I still think that in this area of recreation this marriage was not destroyed and could not be destroyed until the divorce occurred."

■ The law does favor the continuity of the marriage relationship. We have, however, in analogous situations, declined to apply the rigors of the community property laws to a defunct marriage, where the ends of justice would not be served thereby.

In *Yates v. Dohring,* 24 Wn. (2d) 877, 168 P. (2d) 404 (1946), the parties were married in 1935 and lived together

until 1941, at which time they separated by mutual consent. In 1943, the wife commenced an action for divorce, but, before the interlocutory decree was entered, she died as the result of injuries sustained in an automobile accident. The wife's mother and stepfather, with whom she had been residing prior to her death, brought an action against the husband for the wife's unpaid room and board bill. This action was based on the family expense statute, RCW 26.16.205. In affirming a judgment in favor of the defendant husband, we said:

"Where a spouse, by words or conduct, evidences an intention not to maintain the marriage state in its family aspects and disavows all marital obligations, the other is freed from the liabilities incident to the marital status, which are based upon the reciprocal aspects of the relationship. . . ."

In *Togliatti v. Robertson,* 29 Wn. (2d) 844, 190 P. (2d) 575 (1948), we held that bonds purchased by a husband out of his earnings were his separate property, where he had been separated from his wife at the time of their acquisition, even though no final decree of divorce had been entered. We there stated:

". . . The whole theory of community property is that it is obtained by the efforts of the husband or wife, or both, for the benefit of the community."

We again applied this rule in *In re Armstrong's Estate,* 33 Wn. (2d) 118, 204 P. (2d) 500 (1949).

The axiom posited from these cases is that where the spouses, by their conduct, indicate that they no longer have a will to union, then neither may reap the benefits of the community property law, which they would be entitled to had their community relationship remained undisturbed. Conversely, justice demands that, in like situations, the innocent spouse cannot be penalized because of the torts of the offending spouse.

In the instant case, the action for divorce had been commenced by the wife, and was not resisted by the husband. A voluntary property settlement had been reached, and

each party had gone his or her separate way by the time the accident occurred, out of which this action arose. In applying the rule announced to the facts of the instant case, we absolve the community of any liability for the reason that the community was defunct, even though the contractual marriage relationship had not as yet been legally terminated. Had Mrs. Sellner, on that fateful night, acquired an asset, other than by gift, devise or bequest, her former husband could not have called for the aid of the community property laws in order to share in it. Under these same circumstances, the community property laws should not now be invoked in order to impose a community liability.

The judgment against the marital community is reversed, with instructions to dismiss that action. In all other respects, the judgment is affirmed.

FINLEY, C. J., MALLERY, DONWORTH, and HUNTER, JJ., concur.

